OPINION
{¶ 1} William Finklea ("Finklea") was found guilty of child endangering by a jury in the Montgomery County Court of Common Pleas and was sentenced to the maximum sentence of five years. He appeals from his conviction and sentence, raising six assignments of error.
 {¶ 2} The state's evidence established the following facts.
 {¶ 3} In May 2000, Janelle Byrd ("Byrd") lived with Finklea at his home with her two-year-old son, her fifteen-month-old daughter Lanelle, and her four-month old son. Of the three children, only the youngest was Finklea's child. During the months of May to October of 2000, Byrd's thirteen-year-old cousins Malacia Miller ("Miller") and Dominique Starks ("Starks") frequently came to Finklea's home to help Byrd care for her children. During these months, Miller and Starks observed Byrd and Finklea physically abuse Lanelle on numerous occasions. On one occasion, Byrd punched Lanelle in the chest and placed her in a tub of excessively hot water. When Lanelle screamed and cried, Finklea entered the bathroom, took Lanelle out of the bathtub, and hit her with a belt. When Lanelle continued to cry, Finklea put her in a closet. Starks removed Lanelle from the closet when Finklea and Byrd left the house.
 {¶ 4} On another occasion, Starks observed Finklea enter Lanelle's bedroom with a belt when she was crying and heard what sounded like Finklea whipping Lanelle with the belt. She then observed him exit the bedroom still holding the belt. Miller once observed Finklea place Lanelle in a dresser drawer and leave her there with the drawer open only a couple of inches. Miller removed Lanelle from the drawer when Finklea left the room.
 {¶ 5} In another incident, Miller also observed Finklea go into the bathroom where Lanelle was sitting on the floor crying and close the door. Miller heard what sounded like Finklea slamming Lanelle against the door. When Finklea opened the door, Miller saw him place Lanelle back on the floor. On another occasion, Starks heard Byrd yelling at Lanelle, and, when Byrd emerged from her bedroom with Lanelle, the child had a bloody nose. Byrd and Finklea then took Lanelle into Finklea's bedroom, and Miller and Starks heard what sounded like Byrd or Finklea slamming Lanelle against the door. When Byrd and Finklea left the room, Miller and Starks found Lanelle lying silently behind a couch.
 {¶ 6} Miller and Starks indicated at trial that the above incidents were only examples of the abuse that they had witnessed and that there had been many more instances of abuse. They did not tell anyone about the abuse because they were afraid that they would not be permitted to see Lanelle anymore. They felt that they could best help Lanelle by being there to take care of her. However, Starks eventually told her mother about the abuse, and the police began investigating Byrd and Finklea. Finklea told Starks not to tell the authorities anything and to tell the authorities that Miller was lying.
 {¶ 7} After several interviews with police, Byrd admitted to Detective Brad Williams that she and Finklea had abused Lanelle. Specifically, she stated that Finklea had sometimes disciplined Lanelle by placing her in a closed closet and striking her with a belt. She further stated that Finklea had once picked Lanelle up by the arm and thrown her onto the floor, causing a bloody nose. She explained that Lanelle was treated badly because she was not Finklea's child and that it was a "sore spot" in the relationship. Byrd eventually entered a plea of guilty to endangering children and was sentenced to one year of imprisonment. At trial, Byrd testified that she had not made statements to the police implicating herself or Finklea in the abuse of Lanelle.
 {¶ 8} Finklea was indicted with one count of endangering children on September 24, 2001. A jury trial was conducted on March 12 to 14, 2002. At the conclusion of the trial, the jury found Finklea guilty of endangering children. The trial court sentenced him to five years of imprisonment on April 26, 2002.
 {¶ 9} Finklea appeals, raising six assignments of error.
"I. THE TRIAL COURT ERRED, VIOLATING APPELLANT'S CONSTITUTIONAL RIGHTS UNDER THE SIXTH AMENDMENT, THE DUE PROCESS CLAUSE OF THEFIFTH AMENDMENT, AND THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION BY CONSIDERING A CRIME WITH WHICH APPELLANT WAS NOT CHARGED OR TRIED WHEN IMPOSING HIS SENTENCE."
 {¶ 10} Under this assignment of error, Finklea argues that the trial court should not have considered the ultimate death of Lanelle in sentencing him to the maximum sentence of five years. Although Lanelle eventually passed away apparently as a result of the abuse she had suffered, Finklea was not charged with killing her, and the jury heard no evidence regarding her death.
 {¶ 11} The offense of child endangering is a felony of the third degree, which carries a sentence of one, two, three, four, or five years in prison. R.C. 2919.22(E)(3); R.C. 2929.14(A)(3). Because this was Finklea's first offense, the court was required to sentence him to the shortest term unless it concluded that the shortest term would demean the seriousness of his conduct or fail to adequately protect the public from future harm. R.C. 2929.14(B). Before imposing the maximum prison term of five years, the trial court was required to make a finding that Finklea had committed the worst form of the offense. R.C. 2929.14(C). The court was further required to state its reasoning in making the above finding. R.C. 2929.19(B)(2)(d). In sentencing Finklea to the maximum sentence, the court made the required findings and stated its reasoning on the record. However, Finklea argues that the court's reasoning included consideration of a crime with which he was not charged, the death of Lanelle.
 {¶ 12} The court initially stated that it had put aside the fact that Lanelle had died. After noting its concern with Lanelle's tragically short life, the trial court stated:
 {¶ 13} "Sir, I'm gonna find that you committed the worst form of the offense in that you caused the death of — not only the death of a child, but very serious injury to a child who was in your care who was twenty months old [sic], an infant, who could not care for herself, and who was — as I said, had a very tragic, very short life.
 {¶ 14} "In addition, sir, anything — a minimum sentence would demean the seriousness of your — your conduct. And the shortest prison term would not adequately protect the public from — any other child from future incidents by you. I'm concerned that you have another child that — that could also be subject to what Lanelle was subject to.
 {¶ 15} "Sir, I have considered the Principles and Purposes of Sentencing set forth in Ohio Revised Code 2929.11 and all the seriousness factors listed in Revised Code 2929.12. And in support of my decision to impose the maximum sentence, sir, I find, as I said, you did commit the worst form of the offense, that you caused the death of a child — you caused serious — more importantly, you caused very serious injury to a child, an infant. And I'm going to impose a term of five years."
 {¶ 16} It is clear from the trial court's statements at his sentencing that Finklea was given the maximum sentence largely due to the serious injury that he caused a very young child. The references to Lanelle's death do not appear to have been the primary basis for the court's sentencing of Finklea. (As a practical matter, the trial court could hardly ignore that Lanelle had died.) Taken as a whole, the court's statements rely upon the fact that Lanelle's life was made horrific by the actions of Finklea. The court also considered that other children, including Finklea's own son, might be victimized if he were not given the maximum sentence. Thus, the court's sentence was supported by the facts in the record and was warranted given the acts committed by Finklea. Even excluding Lanelle's death, it is clear from the record that she was subjected to what amounted to torture at the hands of Finklea and Byrd for the last few months of her life. The trial court was within its discretion in concluding that this was the worst form of the offense of child endangering and thus warranted imposition of the maximum sentence.
 {¶ 17} The first assignment of error is overruled.
 "II. THE TRIAL COURT ERRED IN IMPOSING UPON APPELLANT A SENTENCE THAT WAS EXCESSIVE AND DISPROPORTIONATE."
 {¶ 18} Finklea asserts that his sentence was excessive and disproportionate in comparison to the sentence of one year that Byrd received. He further argues that he was penalized for asserting his right to a jury trial.
 {¶ 19} Finklea's claims are unsupported by the record. The trial court based its imposition of the maximum sentence on Finklea's egregious conduct. He participated in torturing a child for a period of months. The fact that Byrd's sentence was much lower than Finklea's does not indicate that Finklea was punished for exercising his right to a jury trial. Rather, a number of factors likely contributed to Byrd's sentencing. First, at the time of her guilty plea and sentencing, Byrd had admitted her wrongdoing and had cooperated with authorities, whereas Finklea never admitted any wrongdoing or demonstrated any remorse. Second, more facts regarding the abuse of Lanelle were known at the time of Finklea's sentencing than were known at the time of Byrd's sentencing. As explained in our discussion of the first assignment of error, the trial court's sentence was amply supported by the evidence.
 {¶ 20} Finklea points to the court's statement that it was concerned that Miller and Starks had had to testify and had been traumatized by the situation. He argues that this statement demonstrates that the court was punishing him for insisting upon a trial. We disagree. The statement indicates nothing more than the court's consideration of the impact that Finklea's conduct had had on Miller and Starks. The court's statement was accurate based upon the evidence. In any case, it was a passing comment and does not appear from the record to have been the basis for the court's sentencing.
 {¶ 21} The second assignment of error is overruled.
 "III. APPELLANT WAS DENIED HIS CONSTITUTIONALLY GUARANTEED RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL PURSUANT TO THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AS WELL AS SECTIONS 10 AND 16, ARTICLE I, OF THE OHIO CONSTITUTION."
 {¶ 22} Under this assignment of error, Finklea asserts that his trial counsel was ineffective in failing to object to various acts of misconduct by the prosecutor and in eliciting prejudicial testimony during questioning of Miller and Starks.
 {¶ 23} We evaluate ineffective assistance of counsel arguments in light of the two prong analysis set forth in Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. See id. at 2064-65. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. See id. at 2064. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. See id. at 2065.
 {¶ 24} Finklea's first argument is that his trial counsel failed to object to the prosecutor's improper questioning of Byrd. In particular, he points to the following exchange:
 {¶ 25} "Q. Why did you allow this man to abuse your children?
 {¶ 26} "A. I didn't.
 {¶ 27} "Q. Well, the detective said, when asked why she [sic] did not stop, you said you did not know. And then you said, Willie gets angry a lot. You knew if you spoke up, Willie might get mad. You don't recall saying that?"
 {¶ 28} Finklea argues that this exchange implied that Byrd had allowed him to abuse Lanelle and that more than one child had been involved. He further argues that the second question was improper because Detective Williams had not yet testified and because it misstated his testimony as it eventually was given.
 {¶ 29} Although Finklea correctly notes that the prosecutor's first question implied that Byrd had allowed him to abuse Lanelle, we see no impropriety in that implication. The prosecutor's case clearly established that both Byrd and Finklea had abused Lanelle and that Byrd had done nothing to prevent Finklea's abuse of Lanelle. It was not improper for the state to "imply" as much in its questioning of Byrd. Furthermore, the prosecutor's reference to "children" was an isolated, harmless incident. Defense counsel may well have decided not to object to the misstatement in an effort to avoid drawing the jury's attention to it.
 {¶ 30} With regard to the prosecutor's second question, the prosecutor did not behave improperly in impeaching Byrd's credibility with her prior inconsistent statements. The use of leading questions was appropriate given that Byrd was a court witness. Evid.R. 611(C). Furthermore, it was not necessary for the state to have the detective testify prior to asking Byrd about her statements to him. Evid.R. 613. As such, Finklea's trial counsel did not exercise substandard judgment in electing not to object to the question.
 {¶ 31} Finklea's second argument relates to his defense counsel's questioning of Miller and Starks. He points to a portion of the cross examination of each girl and argues that his trial counsel elicited prejudicial testimony for no apparent reason. Our review of the pages in question reveals that Finklea's attorney asked the girls detailed questions about individual incidents of abuse. Taken in context, it appears that his attorney was attempting to ascertain what each of the girls actually saw, as opposed to what they heard through doors or from each other, and to highlight any inconsistencies in Miller's and Starks' testimony. This was a reasonable tactical decision and did not constitute ineffective assistance of counsel.
 {¶ 32} In his third argument, Finklea claims that his trial counsel failed to object on various occasions when the prosecutor asked repetitive questions. From our review of the three pages cited to by Finklea, it does not appear that the questions asked by the prosecutor were overly repetitive. Furthermore, we note that the prosecutor was examining the two thirteen-year-old witnesses in the questioning regarding which Finklea complains. The slight repetition engaged in by the prosecutor could be explained by the inherent difficulty in examining young witnesses who may speak quietly or fail to fully describe what they saw. In any case, there was no error in the prosecutor's questioning, and Finklea's trial counsel was not ineffective because he did not object.
 {¶ 33} Finklea next argues that his trial counsel was ineffective in that he failed to object to alleged prosecutorial misconduct during opening and closing arguments. In analyzing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused."State v. Jones, 90 Ohio St.3d 403, 420, 2000-Ohio-187, 749 N.E.2d 300, citing State v. Smith (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v. Phillips (1982), 455 U.S. 209,219, 102 S.Ct. 940, 947. Where it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. See State v. Loza (1994), 71 Ohio St.3d 61, 78,1994-Ohio-409, 641 N.E.2d 1082.
 {¶ 34} The alleged misconduct complained of by Finklea occurred during the opening statement and closing argument of the prosecutor. "Prosecutors are entitled to some latitude in arguing what the evidence has shown and what the jury may infer from the evidence." State v.Tibbetts, 92 Ohio St.3d 146, 169, 2001-Ohio-132, 749 N.E.2d 226. Furthermore, "[t]he prosecutor may draw reasonable inferences from the evidence presented at trial, and may comment on those inferences during closing argument." State v. Treesh, 90 Ohio St.3d 460, 466, 2001-Ohio-4,739 N.E.2d 749.
 {¶ 35} During opening statement, the prosecutor stated: "You will learn that [Finklea's child] was born in January of 2000. That it was a few short months after that, that Lanelle's life changed. That Lanelle's life took on a dismal existence. That each day became a struggle; a struggle to endure the abuse this man inflicted upon her; a struggle to know even if she made it through that day, the next day would likely hold the same dread." Similarly, during closing argument, the prosecutor stated: "Lanelle was 15 to 20 months of age when this man began abusing her. That is when her life takes on a dismal existence, when every day became a struggle at his hand and her mom's hand." The prosecutor further stated in closing argument: "The defendant talked about how he was a parent to all three children. Two weren't his own. But, he can't call himself a parent, ladies and gentlemen. He doesn't have that right."
 {¶ 36} Finklea argues that these statements constituted prosecutorial misconduct because they appealed to emotion and sympathy rather than reason. We see no misconduct in the prosecutor's remarks. The state presented evidence that Lanelle was abused frequently over a period of months and that she eventually began to stop crying when Finklea entered a room because crying led to her being beaten. It was a fair comment upon the state's evidence to say that Lanelle's life was dismal and filled with dread. Thus, the prosecutor did not engage in misconduct, and there was no prejudice to Finklea. Accordingly, his attorney did not provide ineffective assistance for failing to object.
 {¶ 37} Finklea argues that his attorney should have objected to the following statement by the prosecutor during closing argument: "She may not have seen the actual throwing against the door, but, ladies and gentlemen, we all know that is what happened." He argues that this statement amounted to the prosecutor's expressing her opinion on the evidence. As stated above, the prosecutor is entitled to make reasonable inferences based upon the evidence, and the above statement did not amount to misconduct. Accordingly, Finklea's attorney had no duty to object.
 {¶ 38} The next statement regarding which Finklea complains occurred during the prosecutor's closing argument: "Instead of protecting her child, she protected her man. What did she tell you the only time she decided to tell the truth?" Finklea argues that, in making this statement, the prosecutor improperly vouched for the credibility of Byrd in the statement she gave implicating Finklea. It is acceptable for a prosecutor to comment upon the credibility of witnesses based upon their testimony in court. See State v. Mundy (1994), 99 Ohio App.3d 275, 304,650 N.E.2d 502, citing State v. Price (1979), 60 Ohio St.2d 136,398 N.E.2d 772. This statement by the prosecutor does not improperly vouch for Byrd's credibility at the time she made a statement to police implicating Finklea. The prosecutor was entitled to state her theory that Byrd had been truthful in her statement to police and that she was being untruthful at trial. Thus, defense counsel could not reasonably have been expected to object to the statement.
 {¶ 39} Finklea further argues that the following statement constituted prosecutorial misconduct and should have been objected to by his attorney: "Ladies and gentlemen, considering the evidence, there can be no doubt that this man is guilty of committing the offense of endangering children." Finklea argues that there could have been doubt in the minds of the jurors. We see no impropriety in this comment and, as such, Finklea's attorney was reasonable in not objecting.
 {¶ 40} In his final argument under this assignment of error, Finklea argues that his trial counsel failed to object to leading questions asked by the prosecutor. He does not point to any specific questions, but rather cites to seven pages in the transcript. Upon review of these pages, we find no questioning that could conceivably have prejudiced Finklea. Accordingly, he was not prejudiced by his counsel's failure to object.
 {¶ 41} The third assignment of error is overruled.
 "IV. APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL THROUGH PROSECUTORIAL MISCONDUCT."
 {¶ 42} We addressed the majority of Finklea's prosecutorial misconduct arguments in our discussion of the third assignment of error and found them to be without merit. He points to only one additional instance of alleged misconduct here-a "repetitive" question asked by the prosecutor and objected to by his attorney. Because the objection was sustained and the prosecutor immediately moved on, we see no prejudice to Finklea as a result of this question.
 {¶ 43} The fourth assignment of error is overruled.
"V. THE TRIAL COURT ERRED THROUGH DENYING DEFENSE COUNSEL THE RIGHT TO CROSS-EXAMINE DETECTIVE WILLIAMS REGARDING A POLICE REPORT INVOLVING THE CHILD ENDANGERING INCIDENT."
 {¶ 44} Under this assignment of error, Finklea argues that the trial court erred in not permitting him to introduce three documents to impeach the testimony of Detective Williams. Specifically, Finklea's trial counsel asked Detective Williams if Byrd had implicated Finklea in her first three discussions with the detective. Detective Williams indicated that Byrd had implicated Finklea in "probably all" of the discussions. Finklea's trial counsel sought to further question Detective Williams regarding the earlier statements. The trial court disallowed the questioning because the earlier statements dealt with Lanelle's death and further questioning regarding those statements would have inevitably led to the jury learning of her death.
 {¶ 45} Given the highly prejudicial impact that knowledge of Lanelle's death would likely have had on the jury, we cannot say that the trial court erred in assuring that the information was kept from the jury. Furthermore, although Byrd did not explicitly implicate Finklea in her early statements to police, it is a reasonable interpretation of her statements to Detective Williams to say that she implicitly implicated him. We cannot see how requiring Detective Williams to explain his reasoning would have aided Finklea's defense, especially considering that it would have opened the door to testimony regarding Lanelle's death. Accordingly, the trial court did not abuse its discretion in disallowing further cross examination of Detective Williams regarding Byrd's early statements.
 {¶ 46} The fifth assignment of error is overruled.
"VI. THE CUMULATIVE EFFECT OF THE ERRORS OCCURRING AT TRIAL DEPRIVED APPELLANT OF A FAIR TRIAL."
 {¶ 47} Under this assignment of error, Finklea argues that the cumulative weight of the errors denied him a fair trial. We have identified very few even arguable errors, and those that we have identified were clearly not prejudicial to Finklea. Such errors cannot form the basis of a reversal based upon cumulative error. See State v.Nields, 93 Ohio St.3d 6, 41, 2001-Ohio-1291, 752 N.E.2d 859, citing Statev. Hill, 75 Ohio St.3d 195, 212, 1996-Ohio-222, 661 N.E.2d 1068.
 {¶ 48} The sixth assignment of error is overruled.
 {¶ 49} The judgment of the trial court will be affirmed.
FAIN, P.J. and GRADY, J., concur.